## The State *v.* The Judge of Probates of West Baton Rouge.

Rule on the Judge of the Court of Probates of West Baton
Rouge, *Favrot,* J., to show cause why a *mandamus* should not
be issued to him.

*Brunot; Lobdell* and *Labauve,* urged that the rule should be
made absolute.

*Favrot,* J., showed cause against the rule.

*R. H. Chinn,* on the same side.

Simon, J. This is an application by the defendant in the suit
of *Babin* v. *Nolan,* for a writ of *mandamus* to the judge of the
Court of Probates of the parish of West Baton Rouge, ordering
him to grant to the applicant a suspensive appeal, from an order

or judgment rendered on the 14th of May last, " *directing a partition or execution of the judgment of this court so far as confirmed, and payment of plaintiff's claims*, &c." The grounds set up in the applicant's petition, are; that the judgment or order complained of, orders an execution of the judgment heretofore rendered between the parties, so far as confirmed by this court, and notwithstanding no final decision or judgment of any kind has yet been rendered in the case as remanded ; that the applicant's counsel moved for an appeal from said judgment, which was refused by the judge, *a quo* ; that said judge has been guilty of a denial of justice ; and that the decree of the Court of Probates, from which an appeal is sought to this court, if suffered to be carried into effect, will work an irreparable injury to the applicant.

A rule to show cause having issued, the inferior judge filed his answer thereto, in which, after indulging in a few introductory remarks on what he considers to be a proper administration of justice, he attempts to sustain the judgment complained of, by going into a detail of facts and circumstances relative to the merits of the controversy, as they took place in the lower court. He contends, however, in the course of his strictures, that the execution of a judgment of this court cannot be stayed at the will or pleasure of one of the parties, and that it is *res judicata* between them, and therefore executory.

It appears, that after the return of the mandate of this court to the court, *a qua*, in the case of *Babin* v. *Nolan*, lately decided, the plaintiff moved the court to order, " that a sale of all the lands, and a partition of all the slaves and other moveable property in kind, belonging to the community heretofore existing between the defendant and his late wife, be made according to law, and *in pursuance of the judgment of said court confirmed by the Supreme Court*, and that the landed property be sold according to law, for cash, to a sufficient amount to cover the portion coming to the plaintiff, as settled by said judgment." This motion was notified to the defendant Nolan, who filed his answer thereto, setting up divers matters in opposition to the plaintiff's application, in the same manner and with the same objections as if it were a new demand, and pretending that there is no final judgment under

which an actual partition can be made, &c. All these objections were overruled by the judge, *a quo,* who sustained the plaintiff's motion *in extenso,* further ordering, that the parties be referred to a notary public to continue the partition to be made between them, and that the parish judge, and *ex officio* auctioneer, be authorized to make the sale of all the landed property, after the usual advertisements, &c.

The only question, therefore, which we have to consider on the present application, is, whether the order complained of does not go further than merely ordering our judgment to be carried into effect; for, if it decides on matters which were not then before us, it is clear that an appeal should have been granted.

On referring to the judgment of the lower court, rendered in October, 1842, which was affirmed subsequently by this court in all respects, except so far as it allowed the value of the improvements made during the marriage on the defendant's landed property, &c., and so far as it might be necessary to amend or modify it after receiving certain evidence to be produced by the defendant for certain purposes, we find that it was ordered and decreed, " that a partition be made according to law between the plaintiff and defendant, of all the property, rights and credits, moveables and immoveables held in community between them, and that the parties be referred to a notary public, to continue the judicial partition to be so made between the plaintiff and defendant." This judgment, so affirmed by us, was to be executed by sending the parties before the notary public therein named, after fixing the terms and manner in which the partition should be made, which terms and manner were to be subsequently determined by the court, *a qua,* contradictorily with the parties concerned. This was done in November, 1843 ; when, after considerable litigation, evincing on the part of the defendant, as we said in our last judgment, " a determination to yield to his adversary nothing but what the latter may be strictly and legally entitled to," a final judgment was rendered by the inferior court, ordering, " that the plaintiff be permitted and authorized to take in kind his share of the slaves and moveable property of the succession of his sister, in the partition which is to be made according to the former judgment; and further, that all the several tracts of land mentioned and described in the said judgment, designated therein by num-

bers 1, 2, 3, 4 and 5, and declared to constitute and form part of the community heretofore existing between the parties, be sold according to law, to operate a partition thereof between them, and that the proceeds be equally divided between said parties." This last judgment was appealed from by the defendant, who disputed the right of the plaintiff to the said partition, in the manner fixed by the judgment of the court, *a qua ;* when, after a full investigation of the respective pretensions of the parties before this court, the judgment appealed from was affirmed by us *in all its parts,* except so far as it liquidated the nett proceeds of the crop of 1842, &c. See case of *Babin* v. *Nolan,* 6 Robinson, 508.

Now, on referring to the order of the lower court, rendered on the motion of the plaintiff after the return of our mandate for execution, we find nothing in it which may be considered as going beyond the dispositions of the judgment affirmed by us, *in all its parts.* It merely orders the partition to be made according to law, and in pursuance of the judgment affirmed by that court, appoints the same notary to whom the parties had been previously referred in a former judgment also affirmed, and names the auctioneer by whom the sale is to be made. It is true it says, that the landed property shall be sold *for cash,* to a sufficient amount to cover the portion coming to the plaintiff, as settled by the judgment; but, according to the judgment affirmed by us, the several tracts of land in community between the parties are to be sold *according to law,* which means in the manner prescribed by law, that is to say, *for cash for a sufficient amount to cover the portion coming to the party who requires it.* Civil Code, art. 1264. It seems to us, that the matters upon which the order complained of was rendered, are nothing but a repetition of those decided in the former judgment; that said order contains no new disposition or decision on the rights of the parties; that it amounts to merely ordering the execution of the decree of this court; and that the applicant is now precluded from claiming at our hands, any alteration or modification thereof, and, *a fortiori,* from opposing its execution. It is *res judicata* between the parties.

We had thought, that our judgment would have put an end to this long and protracted litigation, and that, except as to the mat-

The State v. Judge of Probates of West Baton Rouge.

ters reserved in our last decree, all the various subjects of controversy which had been brought before us, had been put to rest, and particularly those relative to the state of indivision in which the parties had remained, since the death of he defendant's wife, in July, 1841. But it seems, the defendant is determined not to give up what, clearly, from our two judgments, does not belong to him. He must have known, that the right of the plaintiff to be put in possession of his sister's estate, could no longer be disputed ; that the points in controversy, which are renewed by his answer to the plaintiff's motion, had all been adjudicated and settled by a judgment now beyond our power and control ; that, as we said in the case of *Kohn et al.* v. *Marsh,* (3 Robinson, 48,) a case very similar in its features to the present one, *no one can be compelled to hold property with another ;* and that, in order to come to a final liquidation of the estate in community, it is necessary that the property held in common, and which cannot be divided in kind, should be sold and converted into money. With a full knowledge of all the circumstances of his case, and of the issues upon which our judgments were rendered, it seems manifest, that the object of the applicant was to delay the final adjustment of the rights of his adversary, and to remain longer in possession of the common property. This cannot be permitted ; and, however disposed this court may be to listen patiently to the complaints of parties who may think themselves aggrieved by judgments rendered by inferior tribunals, let them rest assured that we will never encourage, nor lend our aid to any attempt made with the view of embarrassing, or in any manner interrupting the course of a fair, impartial and proper administration of justice. Again, our judgment was final on the matters definitely settled thereby ; and we are of opinion that the judge, *a quo,* acted correctly, in refusing to grant an appeal from the interlocutory judgment ordering its execution.

The rule is, therefore, discharged.